ESTATE OF S. S. FORREST, JR., DECEASED, KENT D. FORREST, INDEPENDENT EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Forrest v. Commissioner
Docket No. 4393-89
United States Tax Court
T.C. Memo 1990-464; 1990 Tax Ct. Memo LEXIS 509; 60 T.C.M. (CCH) 621; T.C.M. (RIA) 90464; August 28, 1990, Filed *509 An appropriate order will be issued and decision will be entered under Rule 155. Donald J. Dombrowski, for the petitioner. Richard T. Cummings, for the respondent. SCOTT, Judge. SCOTT MEMORANDUM OPINION This case is before the Court on petitioner's Motion for Partial Summary Judgment filed September 27, 1989, and respondent's Cross-motion for Partial Summary Judgment filed December 8, 1989. Respondent determined a deficiency in the estate tax of the Estate of S. S. Forrest, Jr., in the amount of $ 524,755.45. All issues have been disposed of by agreement of the parties, except whether the value of certain real property is includable in decedent's gross estate. The parties agree that if the conveyance to decedent by his grandparents of the property involved was of a life estate, the value of the property is not includable in decedent's gross estate, but if the conveyance was of a fee simple estate, the value of the property is includable in his gross estate. There is no dispute as to the facts and the parties agree that the remaining issue may be decided on the partial summary judgment motions. S. S. Forrest, Jr. (decedent), died *510 on June 20, 1985, leaving children surviving him. Kent D. Forrest was appointed as independent executor of decedent's estate. The executor, who resided in Houston, Texas, at the time of the filing of the petition in this case, filed the estate tax return for decedent's estate with the office of the Internal Revenue Service in Austin, Texas. By deeds dated December 31, 1940, and December 20, 1941, decedent's grandparents conveyed to decedent and his brother, E. L. Forrest, certain interests in real property located in Lubbock and Crosby Counties, Texas. Each deed contained the following language: and by these presents do grant, sell and convey unto said Edwin L. Forrest and S. S. Forrest, Jr., as their individual property, they to share equally a life estate in and to the following described lands * * * * * * with remainder over, as to each of said grandsons, to their respective bodily heirs, as their individual property; but if either S. S. Forrest Jr., or Edwin L. Forrest die without leaving bodily heirs, his share shall go to the bodily heirs of his brother, whether the brother be living or deceased. In the event that there are no bodily heirs of the survivin *511 brother, title shall be individually vested in the brother if he be living, or if dead title shall be vested in S. L. Forrest, his heirs or his assigns, forever * * * * * * TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said S. S. Forrest, Jr., and Edwin L. Forrest, and their bodily heirs * * * . In the notice of deficiency to the executor of decedent's estate respondent determined that the value of the real property conveyed to decedent by his grandparents is includable in decedent's gross estate. In his cross-motion for partial summary judgment respondent states that the value of this property is includable in decedent's gross estate since the rule in Shelley's case, which was followed by the Texas courts at the date of decedent's death, applies to the grant of real property to decedent from his grandparents creating a fee simple interest in the property in decedent. Petitioner contends that the rule in Shelley's case does not apply and that only a life estate was granted to decedent and therefore, the value of the property is not includable in decedent's gross estate. In *512 support of this contention, petitioner argues that the trend in Texas has been not to apply the rule in Shelley's case unless the conveyance falls squarely under that rule and that the conveyance here involved does not fit squarely under the rule. In general, the rule in Shelley's case provides that if a grant of a freehold interest is made to a grantee with a remainder to the grantee's bodily heirs, the grantee will take a fee simple interest in the property. Under Texas law, the rule is applied if five conditions are satisfied. First, the grantee must be granted a freehold interest. Second, there must be a conveyance of a remainder interest. Third, both the freehold and the remainder interest must be conveyed in the same instrument. Fourth, the apparent remainder interest must be to the heirs of the holder of the initial freehold interest. Fifth, the freehold and apparent remainder interest must be of the same quality. . The first condition is satisfied by the grant of a life estate to decedent. The second condition is satisfied by the conveyance of an apparent remainder interest. The third *513 condition is satisfied in that both the life estate and the apparent remainder interest are conveyed in the same document, the deed. The fifth condition is satisfied in that the life estate and the remainder interest are of the same quality. They are both legal interests. Accordingly, whether the rule in Shelley's case applies is determined here by whether the fourth condition is satisfied. Under Texas law, the rule in Shelley's case was only applicable in situations where the words "bodily heirs" in the deed were used in their technical sense. ; ; , affd. ; (Com. of Appeals of Texas 1919). In their technical sense, the words "bodily heirs" mean lineal descendants so that the property passes to an indefinite succession of takers from generation to generation. . If the words "bodily heirs" were used in the deed to decedent from his grandparents *514 in their technical sense, the fourth condition would be satisfied and the rule of Shelley's case would apply under Texas law as in effect at the date of decedent's death. The decedent would have a fee simple interest in the property and the value of the property would be included in decedent's estate. Alternatively, if the words "bodily heirs" were not used in their technical sense, but were used to refer to the children of the holder of the freehold interest, the conveyance would create a life estate in decedent in the property with a remainder interest in his children. The rule of Shelley's case would not apply under these circumstances and the estate created in decedent would be a life estate. Therefore, the value of the property would not be included in decedent's gross estate. The meaning of the words "bodily heirs" as used by the grantor determines whether the fourth condition necessary to the application of the rule in Shelley's case is satisfied. The grantor's intent as to the application of the rule in Shelley's case is not relevant since the rule in Shelley's case is a rule of law. . *515 However, it is material whether the instrument as a whole indicates that the grantor intended by use of the words "bodily heirs" to signify an indefinite succession of takers from generation to generation. . Prior to the abolition of the application of the rule in Shelley's case in Texas, the courts of that State had begun to look with disfavor on its application. The language of the deed or will must clearly establish the intent of the grantor to use the words "bodily heirs" in their technical sense for the rule to apply. For the Rule in Shelley's Case to convert "issue of her body" into heirs generally it must be the intention of the grantor to use those words in their technical sense of "heirs" so as to "pass from person to person through successive generations in regular succession." In other words, that the grantor intended the words "issue of her body" to mean the whole line of heirs. [Citations omitted.] . See also , affd. . The Texas courts have applied *516 four rules of construction in determining whether the words "bodily heirs" are used in their technical sense: (a) Every part of an instrument should be harmonized and given effect to, if it can be done. If that cannot be done and it is found that the will [instrument] contains inherent conflict of intentions, the object of the grant being considered shall prevail. (b) If a will [instrument] or its parts are equally capable of two constructions, one consistent with an intention, on the part of the grantor to do that which it was lawful for him to do, and one consistent with an intention to do that which it was unlawful for him to do, the former will be adopted. (c) The rule that courts will confer the greatest estate on the grantee that the terms of the grant will permit is subordinate to the rule "that every part of the will should be harmonized and given effect to, if it can be done." (d) In a will [instrument] to a person for the term of his natural life and at his death to his "bodily heirs," the words "bodily heirs" thus employed, if from the entire text of the will it is shown that the words "bodily heirs" were used in the sense of children, are words of purchase *517 and not of limitation. ; see also (Com. of Appeals of Texas 1932). In construing the instrument, all of its provisions should be looked to for the purpose of ascertaining what the real intention of the grantor was, and if this can be ascertained from the language of the instrument, then any particular paragraph of the deed, which considered alone would indicate a contrary intent, must yield to the intention manifested by the whole instrument. [Citations omitted.] . The intention of the grantor will prevail if it can be determined from the language of the deed. The deed granting the property here involved to decedent includes language granting the remainder interest, upon the death of the decedent, without bodily heirs, to the bodily heirs of the brother of the decedent whether the brother is living or dead. The term "heirs" refers only to those who, upon the death of another, are entitled to receive property of the decedent. *518 A condition precedent to being an heir is that the person from whom the property is to be received is dead. It is a well accepted rule that when a person is still living, he has no heirs. Therefore, a conveyance to the heirs of a living person is void for uncertainty. . If the grantors to decedent intended to use the words "bodily heirs" in their technical sense, upon the death of the decedent without heirs the grant would be void for uncertainty if decedent's brother were still living. If the words "bodily heirs" are interpreted not in their technical sense, but as children, the entire language of the deed would be given effect. A remainder interest to the children of the living brother of the decedent is valid. Furthermore, the nontechnical use of the words "bodily heirs" in the remainder of the deed could be given effect. Under the first rule, construing the words to mean children harmonizes and gives effect to the entire deed. The deeds here involved are capable of two constructions. Under one construction, the words "bodily heirs" could be considered to be used in their technical sense *519 and under the other construction the words "bodily heirs" could be interpreted to be used in their nontechnical sense to mean children. As both constructions are legal, the second rule of construction used by Texas courts is of no assistance in this case. The greatest estate that could be conferred on the decedent would be a fee simple estate. However, the rule that a will or deed will be interpreted to confer the greatest estate on the grantee that its terms will permit is subordinate to the first rule of construction, that every part of the will or deed should be harmonized and given effect. As stated above, under the first rule of construction, the Texas courts would not confer a fee simple estate upon the decedent, but would construe the words "bodily heirs" to mean children. Therefore, under the third rule of construction as under the first, decedent would have only a life estate. In determining if the words "bodily heirs" were intended in their technical sense, the language and context of the entire conveyance must be considered. ; As discussed under the first rule of construction, *520 the context of the deed indicates that the words "bodily heirs" were used in a nontechnical sense to mean children. Therefore, under the fourth rule of construction of the Texas courts, the words "bodily heirs" do not refer to heirs generally, but only to children of decedent and children of decedent's brother. ; . A fact situation similar to the one here before the court is described in The grantor deeded property to her granddaughter "and at her death to the issue of her body, or their descendants, in accordance with the laws of descent and distribution." The words "issue of her body" were construed as meaning children. Accordingly, the Supreme Court of Texas held that the rule in Shelley's case did not apply and therefore the grantee held only a life estate in the property. . We conclude that the words "bodily heirs" s used in the deeds here involved were not used in their technical sense, but were used to mean children. Therefore, the requirements for the application *521 of the rule in Shelley's case have not been satisfied. Accordingly, the decedent held only a life estate in the real property conveyed to him by his grandparents. We will, therefore, grant petitioner's motion for partial summary judgment and deny respondent's cross-motion for partial summary judgment. An appropriate order will be issued and decision will be entered under Rule 155.